# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LEISA PITTMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONSOLIDATED NUCLEAR ) <br> SECURITY, LLC ) <br> ) <br> Defendant. ) <br> ) | No.  3:15-CV-514 |

## COMPLAINT

Comes Leisa Pittman, by and through counsel, and, for her Complaint against Defendant Consolidated Nuclear Security, LLC, states as follows:

## JURISDICTION AND VENUE

1. This is an action arising under federal law, and, more specifically, the Equal Pay Act of 1963, 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3), and, accordingly, this Court has jurisdiction under 28 U.S.C. § 1331.

2. All of the acts complained of herein occurred while Plaintiff was employed by Defendant at a work site in Anderson County, Tennessee, within the district of this Court.

## PARTIES

3. Plaintiff is an individual resident of the State of Tennessee. Plaintiff has worked at the federal Y-12 facility in Oak Ridge, Tennessee since the 1980s. Plaintiff has been employed by Defendant since Defendant took over the contract to operate the federal government's Y-12 facility on July 1, 2013.

4. Defendant Consolidated Nuclear Security, LLC is a Delaware Limited Liability Company and, upon information and belief, may be served by service of process on its registered agent, C T Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929-9710.

5. Defendant has operated the federal government's Y-12 facility in Oak Ridge since July 1, 2013 under a contract with the United States government.

## FACTS

6. Plaintiff was employed by Defendant's predecessor Y-12 contractor, Babcock & Wilcox Technical Advisors, Y-12, LLC ("B&W") with a title of "Production Support Specialist."

7. However, in March, 2013, a vacancy occurred in the position of Supervisor.

8. There are pay grades at the Y-12 facility, and the position of Supervisor was (and is under Defendant) a position with a higher pay grade than the position of Production Support Specialist; in other words, the position of Supervisor paid more (and pays more under Defendant) than the position of Production Support Specialist.

9. Plaintiff was designated by B&W as "Supervisor, Acting," but retained Plaintiff's title and pay rate applicable to her title of Production Support Specialist.

10. Defendant took over operations of the Y-12 facility on July 1, 2013, and employed Plaintiff on that date.

11. Plaintiff was employed by Defendant in the job function of "Supervisor, Acting," from July 1, 2013 (when Defendant took over operation of Y-12) until October 5, 2015.

12. An organizational chart created by Defendant, showing Plaintiff in the positions of both Production Support Specialist and Supervisor, is attached hereto as Exhibit 1. The only

distinction between Plaintiff and the other Supervisors shown on the chart is that Defendant appended a footnote next to her Supervisor title, which read "Acting."

13. Upon information and belief, Plaintiff was the only such "Acting" Supervisor employed by Defendant for any substantial period of time, and Defendant did not similarly employ men Production Support Specialists as "Acting" Supervisors at the lower rate of pay applicable to Production Support Specialists.

14. Upon information and belief, Defendant employed a man, Ronnie Melton, as a "Supervisor, Acting," but promptly hired Mr. Melton as Supervisor and paid him Supervisor pay for that work.

15. Upon information and belief, from the time of being designated "Supervisor, Acting" until October 5, 2015, Plaintiff performed substantially equal job functions as other Supervisors employed by Defendant, who were primarily men, but was paid less for her work.

16. Plaintiff's "Supervisor, Acting" position required equal skill, effort, and responsibility, and was performed under similar working conditions as the Supervisor employees of Defendant.

17. Although Defendant takes into account seniority and merit in determining pay rates, Plaintiff's pay was substantially less than that of other Supervisors not because of her lack of seniority or merit but because Defendant continued to pay Plaintiff in accordance with the pay grade applicable to Production Support Specialists.

18. Upon information and belief, Defendant's methodology of continuing indefinitely B&W's practice that had been in place since March, 2013 of paying Plaintiff at the lower pay rate applicable to Production Support Specialists for her "Supervisor, Acting" work was

designed by Defendant in July, 2013 as a device to pay Plaintiff less for her work as Supervisor based on her sex as a woman than men performing the same Supervisor work.

19. In the alternative, whether Defendant's practice of paying Plaintiff at the lower pay rate applicable to Production Support Specialists for her work as Supervisor was originally designed for the purpose of paying Plaintiff less based on her sex as a woman than men performing the same Supervisor work, Defendant was aware that the practice had that effect, and caused it to occur.

20. In the second alternative, whether or not Defendant was aware of the effect, Defendant's practice of paying Plaintiff at the lower pay rate applicable to Production Support Specialists for her work as Supervisor than men performing the same Supervisor work had the effect of paying Plaintiff less than men performing the same work.

21. As a result of Defendant's practice of paying Plaintiff at the lower pay rate applicable to Production Support Specialists for her work as Supervisor than men performing the same Supervisor work, Plaintiff suffered damages, including losing a substantial amount of pay over the period she served as "Supervisor, Acting."

22. Defendant repeatedly advertised Supervisor positions for other vacancies in the position of Supervisor.

23. However, upon information and belief, Defendant did not at any point prior to April, 2015 advertise a vacancy in Plaintiff's position or otherwise seek to fill Plaintiff's position other than by continuing to employ Plaintiff as "Supervisor, Acting" in that position while paying her the lower pay applicable to a Production Support Specialist position.

24. In April, 2015, Plaintiff filed a complaint with the Defendant's ethics office

25. Thereafter, after receiving no response to Plaintiff's April, 2015 ethics complaint, Plaintiff wrote Ms. Sexton an email on June 22, 2015, copying Stephen Long, a Human Resources employee of Defendant, a copy of which is attached hereto as Exhibit 2 (this email string also contains other, later emails).

26. The email stated that "I have been doing th[e] job [of supervisor] since March of 2013, without pay…. They keep paying the men I work with day in and day out their supervisors pay, and a few have retired. I know as a production support specialist I am a fill in supervisor but I have been doing this job every day for over 2 years. Susan Baker told me they weren't going to hire me as a supervisor but I had to keep doing the job until they hired someone to replace me. That was the same day they hired Ronnie Melton as a supervisor and I work with him and Ray Ivey every day. I have talked to EEO and Tracy Nelson, without any response, so I just figured there wasn't anything to be done about it."

27. Plaintiff did not receive any response from Defendant to either the ethics complaint or her June 22, 2015 email, so on July 20, 2015, she sent an email to Ms. Sexton and Mr. Long and Kristi Stogsdill, an attorney employed by Defendant who had provided a presentation to Defendant's employees at the Jack Case building in the Y-12 facility regarding laws governing employment, including the Equal Pay Act of 1963. This email is also contained in the email string attached hereto as Exhibit 2.

28. Plaintiff in her email discussed the men supervisors she worked with as peers and stated that "[a]ll of these guys do get or did get paid supervisors pay every day." Plaintiff stated that "I thought the practicing of promoting and paying men and not women who work right along with the men went out in the 1960's. Kristi, I have sent this to you because I went to your legal brief in Jack Case and the information you discussed with us covered this."

29. Plaintiff received no response to this email, either.

30. Accordingly, on July 29, 2015, Plaintiff wrote an email to Ms. Sexton, Mr. Long, Ms. Stogsdill, Diane Grooms, who was Defendant's head of Workforce Strategies & Human Resource Operations, and Chad Mee, who was the head of Y-12 Labor Relations, a copy of which is contained in the email string attached hereto as Exhibit 2.

31. The email asked "[c]an any of you please tell me who I can contact about my current job position situation, as described in the email below. I feel I have been treated unfairly for the supervisory position that I do on a daily basis and have done for over 2 years."

32. Upon information and belief, based on Defendant's complaints regarding not being paid the same as men for performing the same work, Defendant decided to fill the Supervisor position being occupied by Plaintiff.

33. Plaintiff applied for the position, but was not interviewed and was not selected.

34. Upon information and belief, the person selected did not have a "Q Clearance," which is a necessary qualification to perform the Supervisor position. Plaintiff does a Q Clearance and has had one since 1988.

35. On September 15, 2015, at 7:05 a.m., Defendant notified Plaintiff by email that she was "not among those selected for further consideration for this position." A copy of this email is attached as Exhibit 3.

36. On September 15, 2015, at 8:52 a.m., Defendant sent an email to Plaintiff regarding her complaint to Ethics, stating that "[t]his message is to notify you that your concern is active and in-process. I will contact you directly once the review has been completed." A copy of this email is attached as Exhibit 4.

37. Plaintiff responded to the 8:52 email on the same day by forwarding to Leslie Daugherty a copy of the 7:05 email, pointing out that she had not been hired for the position, and stating "I received your email. Just thought you should know I received this today. I am still doing this job every day. It's amazing I can't get an interview after having this job since March of 2013." A copy of this email is attached hereto as Exhibit 5.

38. Defendant did not respond at all to this email.

39. On October 5, 2015, Plaintiff was notified by Defendant that she would no longer be "Supervisor, Acting," and would be returned to her Production Support Specialist job functions.

40. The position which Plaintiff had occupied as "Supervisor, Acting" was filled by Defendant on a temporary basis by a male, Robert Goins.

41. Upon information and belief, Defendant's decisions to advertise a vacancy in Plaintiff's position, to not select for that position, and to return Plaintiff to her Production Support Specialist job functions (i.e., to remove Plaintiff from her Supervisor job functions) were based upon, and were in retaliation for, Plaintiff's complaints that she was not being paid the same as men for performing the same work.

42. Defendant's acts of paying Plaintiff less than those paid as Supervisor for the same work performed by Plaintiff constitutes discrimination on the basis of Plaintiff's sex in violation of 29 U.S.C. § 206(d).

43. Defendant's acts of retaliating against Plaintiff for complaining about being paid less than men for her Supervisor work constitute discrimination against Plaintiff for filing a complaint in violation of 29 U.S.C. § 215(a)(3).

Wherefore, Plaintiff prays that:

A. Issue process and bring Defendant before the Court;

B. Empanel a jury of twelve for the trial of this case;

C. Order Defendant to reinstate Plaintiff to the position of Supervisor with all promotions, advancements, and credits she would have received had she been placed in that position on July 1, 2013;

D. Grant Plaintiff a judgment against Defendant for compensatory and liquidated damages, attorney fees, injunctive relief (including reinstatement and back pay) and other relief from Defendant for Plaintiff's damages caused by Defendant's violations of 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3), including but not limited to the difference between the pay and benefits she actually received and the pay and benefits she would have received had she been placed in the position of Supervisor on July 1, 2013.

E. Award Plaintiff her costs in this cause, including but not limited to her reasonable attorney's fees and other litigation costs.

F. Assess the costs of the Court in this cause against Defendant; and

G. Grant Plaintiff and those similarly situated to Plaintiff such other and further relief to which she or they may be entitled of as the Court may otherwise deem appropriate

Respectfully Submitted,

/s/Mark N. Foster
Mark N. Foster, BPR # 023626
P.O. Box 192
Rockwood, TN 37854
(865) 354-3333
*Counsel for Plaintiff*